UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TOMMIE L. CARTER,

                Plaintiff,

v.                                  Case No. 17-cv-1297-pp

JUSTIN MAHER,

                Defendant.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR RECUSAL (DKT. NO. 27), GRANTING PLAINTIFF'S REQUEST TO WITHDRAW MOTION TO COMPEL (DKT. NO. 34), WITHDRAWING MOTION TO COMPEL (DKT. NO. 28), DENYING AS MOOT PLAINTIFF'S MOTION TO STRIKE (DKT. NO. 32), DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 37) AND DENYING PLAINTIFF'S MOTION FOR AN INVESTIGATION (DKT. NO. 38)**

---

Plaintiff Tommie L. Carter is a Wisconsin state prisoner representing himself. He filed a complaint alleging that the defendant, Officer Justin Maher, did not give him his inhaler or alert medical staff when the plaintiff suffered an asthma attack. Dkt. No. 1. On October 10, 2017, Magistrate Judge David E. Jones screened the complaint and allowed the plaintiff to proceed on an Eighth Amendment claim of deliberate indifference to a serious medical need. Dkt. No. 10 at 6-7. The clerk's office later reassigned the case to this court because the defendant did not consent to a magistrate judge presiding over his case. Dkt. No. 13. The plaintiff has filed a motion for recusal, dkt. no. 27, a motion to compel, dkt. no. 28, a motion to strike his January 23, 2018, letter, dkt. no.

1

32, a motion to appoint counsel, dkt. no. 37 and a motion for an investigation, dkt. no. 38.

  1.  **Motion for Recusal**

In his January 24, 2018, motion for recusal, the plaintiff asks that I recuse myself from his case, stating that I am "purportedly colluding with the defendant and their attorney against the plaintiff." Dkt. No. 27 at 1. The plaintiff asserts that he believes that I will prejudge this case based on my "long professional and social relationship with the defendant['s] attorney . . . ." Id. In support of this argument, the plaintiff asserts that, while I am "fully aware" that the defendant answered the complaint in December, 2017, I have "deliberately refused" to send him a scheduling order, and have ignored his request for one. Id.

Section 144 of Title 28 of the United States Code says that if a party files a timely and sufficient affidavit "that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party," that judge must reassign the case to another judge. The statute says that the affidavit has to "state the facts and the reasons for the belief that bias or prejudice exists." The court is willing to consider the plaintiff's motion to be an "affidavit." But it does not state sufficient facts showing that I am personally biased or prejudiced against him. According to the court docket, the defendant is represented by an attorney named Ann M. Peacock, from the Wisconsin Department of Justice in Madison, Wisconsin. As far as I recall, I don't know an attorney named Ann Peacock with the Wisconsin Department of

Justice; if ever I have met her in the past, I do not remember having done so. I don't have a "long professional and social relationship" with Attorney Peacock; I don't have *any* relationship with Attorney Peacock.

The plaintiff says that the proof that I am biased against him is that I have not issued a scheduling order in his case. But I *have* issued a scheduling order. I issued that order on January 22, 2018—a little over a month after the defendant answered the complaint. Dkt. No. 26. That order set a discovery deadline of May 25, 2018, and a deadline for filing dispositive motions of June 29, 2018. Id. I am sending a copy of that order to the plaintiff along with this order.

Section 455 of Title 28 requires a judge to disqualify herself "in any proceeding in which [her] impartiality might reasonably be questioned." It also requires a judge to recuse herself if she has a personal bias or prejudice against any party, or personal knowledge of disputed facts. I don't know the plaintiff, Mr. Carter, and I don't have any reason to be biased or prejudiced against him. I don't know defendant Justin Maher, and have no reason to be biased in his favor. It *did* take me over a month after the defendant answered to issue the scheduling order; that is due in great part to the fact that, because of the death of one judge on this court and the retirement of another, we are short-handed, and the number of cases filed in our court has increased. To my regret, this means that I am behind on many cases. I wish that I were not. My delay in issuing orders is not the result of bias or prejudice; it is the result of

the amount of work that results from a case load of hundreds of criminal and civil cases.

The plaintiff has not stated a basis for me to recuse myself, and I will deny his motion asking me to do so.

**2. Motion to Compel**

On the same date that the court received his motion for recusal, the court received from the plaintiff a motion to compel discovery. Dkt. No. 28. The plaintiff states that in December 2017, he served on the defendant a request for production of documents, admissions and interrogatories, but that the defendant did not respond in thirty days. Dkt. No. 29. In response, the defendant states that, as he informed the plaintiff, discovery could not start until the court issued the scheduling order (on January 22, 2018), and says that he explained to the plaintiff that he would respond to the plaintiff's discovery requests thirty days after January 22. Dkt. No. 33. In his reply, the plaintiff says that while he previously incorrectly thought that the court had colluded with the defendant by refusing to timely issue a scheduling order, he now realizes that because of the court's heavy hearing calendar in December 2017 and trial in January 2018, it could not issue orders during that time. Dkt. No. 34. The plaintiff states that he therefore wants to withdraw his motion to compel. Id.

The court will grant the plaintiff's request to withdraw his motion to compel.

### 3. Plaintiff's Motion to Strike

The plaintiff sent the court a letter dated January 23, 2018 (the court received it on January 25), in which he reiterated his assertion of "collu[sion]" between the court and the defendant. Dkt. No. 31. Based on his letter, the plaintiff appears to take issue with the amount of time it took for the court to issue a scheduling order and the fact that discovery did not begin until after the court issued the scheduling order. Id.

A day or two after the plaintiff submitted his letter, he filed a motion to strike the letter. Dkt. No. 32. The plaintiff explained that he was angry when he wrote the letter, and he apologized for using the letter to vent his anger. Id. He also stated that he had been acting impolitely lately and that he would speak with his psychologist about his negative behavior. Id.

The court appreciates the plaintiff's apology. The court understands that it must be very frustrating to be in custody, and to not hear from the court, or the defendant, when he expects to. But the court encourages the plaintiff to think hard before sending letters such as the one he sent to the court. It is important, even when they are frustrated, that the parties act civilly toward each other and toward the court; the court tries very hard, even when it is frustrated, to treat the parties with respect and civility.

The court will deny as moot the plaintiff's motion to strike his letter; the court has accepted the plaintiff's apology, and hopefully we can move on with his case in a civil manner.

### 4. Motion to Appoint Counsel

On April 9, the court received from the plaintiff asking the court to appoint a lawyer to represent him. Dkt. No. 37. The plaintiff says that he has contacted at least fifty lawyers, but hasn't been able to find one. Other inmates have been helping him, but he says he is not competent to try the case himself, and he'll need medical evidence. He also says he has encountered "discovery complications," and says he has a history of being suicidal. He says if he has a lawyer, the outcome of his case will be very different. Id. at 1. He concludes by asking the court to appoint counsel because he lacks legal experience, and because "complex" discovery rules put him at a disadvantage in "countering the defendant's discovery tactics." Id. at 2. The plaintiff attached to the motion nine pages of letters from lawyers whom he'd contacted; all of them declined to represent him. Dkt. No. 37-1.

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the plaintiff must make reasonable efforts to hire counsel on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). Generally, to show the court that he has tried to find a lawyer on his own, the court requires a plaintiff to contact at least three attorneys, and to provide the court with (1) the attorneys' names, (2) their addresses, (3) the date and the way the plaintiff attempted to contact them, and (4) the attorneys' responses.

After the plaintiff demonstrates that he has made a reasonable attempt to find an attorney on his own, the court will decide "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). The court looks, not only at a plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id. "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyering willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

The court agrees with the plaintiff that he has made reasonable efforts to find counsel on his own. He has met the first requirement of the Pruitt test. The court will not, however, grant his motion to appoint counsel at this point in the case. The plaintiff already has demonstrated that he knows how to serve discovery demands, and the defendant has acknowledged that he will comply with the plaintiff's discovery requests to date. The deadline for completing discovery does not expire until May 25, 2018; the plaintiff has time to ask the defendant for clarification or additional discovery if what he has received so far is not sufficient. At this point, the court concludes that, despite the plaintiff's health issues and the fact that he does not have legal training, he is capable of representing himself. If the case reaches a point where the plaintiff needs an

7

attorney to appear for him in court, or where the court believes that it is necessary for the parties to present evidence, the plaintiff may renew his motion at that time.

### 5. Motion for Investigation

Finally, on April 12, 2018, the court received from the plaintiff a motion for an investigation. Dkt. No. 38. The plaintiff states that on April 10, 2018—months after he filed his case—an officer named Anderson searched his cell (while the plaintiff was in the law library) and took evidence that the plaintiff planned to use in this case. Id. at 1. He says that Officer Anderson has harassed him and threatened him, and that Anderson's actions were designed to obstruct the plaintiff's access to this court. He also alleges that Anderson was trying to send the plaintiff a "message" that any time the plaintiff files a complaint on Anderson, Anderson will interfere with the plaintiff's rights. Id. The plaintiff asks that "a prompt investigation be conducted" of Anderson's actions. Id. at 2.

The court will deny the plaintiff's motion. This court is not the disciplinary authority for prison staff members who violate an inmate's rights. The appropriate first step for the plaintiff to take is to use the Inmate Complaint Review System ("ICRS") and file a grievance, or a complaint, about Anderson's alleged behavior. This will notify prison staff that the plaintiff believes Anderson has violated his rights, and the prison staff can conduct an investigation. If the ICRS process does not resolve the plaintiff's concerns, the plaintiff can consider whether he believes that Anderson has violated his

constitutional rights, and if so, he may consider whether to file a separate case against Anderson. This case involves the plaintiff's allegations against defendant Maher only.

### 6. Conclusion

The court **DENIES** the plaintiff's motion for recusal. Dkt. No. 27.

The court **GRANTS** the plaintiff's request to withdraw his motion to compel, dkt. no. 34, and **ORDERS** that the plaintiff's motion to compel, dkt. no. 28, is **WITHDRAWN**.

The court **DENIES AS MOOT** the plaintiff's motion to strike. Dkt. No. 32.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion for appointment of counsel. Dkt. No. 37.

The court **DENIES** the plaintiff's motion for investigation. Dkt. No. 38.

Dated in Milwaukee, Wisconsin this 18th day of April, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
United States District Judge**